J-S13028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HAKIM LOFTON | : | |
| | : | |
| Appellant | : | No. 1980 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 28, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004726-2019

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                       **FILED JULY 23, 2021**

Appellant, Hakim Lofton, appeals from the judgment of sentence

entered in the Philadelphia County Court of Common Pleas, following his bench

trial convictions for aggravated assault, possessing an instrument of crime,

simple assault, and recklessly endangering another person.[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

> At trial, the Commonwealth presented the testimony of
> Philadelphia Police Officers Booker and Nuss, and Transit
> Police Officers McEwan and Nixon of the Southeastern
> Pennsylvania Transit Authority (SEPTA).  The
> Commonwealth's evidence also included videos taken from
> the body-worn cameras of Officers Nuss and Nixon, as well
> as a video of the assault recorded by a security camera.
> [Appellant] testified on his own behalf.  Viewed in the light
> most favorable to the Commonwealth as the verdict winner,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a), 907(a), 2701(a), and 2705.

the evidence established the below facts.

On May, 4, 2019, at approximately 9:00 p.m., while driving his patrol car near the 2800 block of Somerset Street in the Kensington section of Philadelphia, Officer Booker noticed a man in the middle of the street holding the side of his neck with one hand and waving his other hand in the air to get the officer's attention. Officer Booker stopped his patrol car, and the man, later identified as Eric Luper, told Officer Booker that he had been stabbed near that location. Officer Booker observed that the left side of Mr. Luper's neck had two puncture wounds, which were still actively bleeding. Soon thereafter, Officer Nuss arrived. Officer Booker then took Mr. Luper into his patrol car at approximately 9:08 p.m. and began driving him towards Temple University Hospital for treatment.

Officer Nuss stayed behind to survey the area for any witnesses to the stabbing. He also activated his body-worn camera. The video from his camera was admitted at trial as Commonwealth Exhibit C-3 ("Exh. C-3"). At approximately 9:08 p.m., Office Nuss encountered a woman named Omayra Echevarria, who was visibly shaking, stuttering her words, and talking quickly and loudly about the stabbing to an unidentified female on the street. Officer Nuss approached Ms. Echevarria, who at that time was stating to the female, "so the dude went like this with a knife," while holding her right arm up high in the air. Officer Nuss asked, "Ma'am, what did he look like?" Ms. Echevarria described the stabber to Officer Nuss as a skinny, black male who was about the same height as Officer Nuss and who was wearing red pants and a "wife-beater" t-shirt. Officer Nuss then immediately used his radio to relay Ms. Echevarria's description to his fellow officers. Ms. Echevarria further stated that, after the stabbing, the stabber ran toward the nearby "El" station stop.

Officer Nuss's partner, Officer McEwan, also was present at the scene. After the officers asked where the stabbing took place, Ms. Echevarria led them down the street and pointed out a pillar outside a grocery store located at 2769 Kensington Avenue. She explained that the victim was standing at the pillar, that Ms. Echevarria was standing a few feet away, and that the stabber came up from behind

- 2 -

them and stabbed the victim. She further stated that the stabber said nothing before stabbing the victim. Ms. Echevarria made all of the aforementioned statements to the officers within the first four minutes of initially being approached by Officer Nuss. She was visibly shaking and speaking quickly throughout the time she was with the officers. At one point, Officer Nuss instructed Ms. Echevarria to breathe in an apparent effort to calm her down.

After Officer McEwan noticed security cameras out front of the grocery store, he went inside and successfully recovered video from a camera that had captured the stabbing. The video was admitted at trial as Commonwealth Exhibit C-5 ("Exh. C-5"). The video revealed that two or three people were standing right in front of the pillar identified by Ms. Echevarria when a person with a white t-shirt walked northbound towards them, stopped in front of the pillar, and swung an arm down towards another person who was also wearing a white t-shirt. The victim then ran away while the stabber paused for a few moments before crossing the street.

At approximately 9:00 p.m. that same evening, SEPTA Transit Officer Nixon was on patrol nearby with his partner at the platform for SEPTA's Somerset Station. Upon hearing his partner tell someone to "drop the knife," Officer Nixon looked down the steps of the platform towards his partner and saw [Appellant]. Officer Nixon observed [Appellant] running up the stairs of the platform holding a knife that appeared to be approximately six to eight inches long. Officer Nixon had his taser out, his partner drew her gun, and then [Appellant] immediately dropped the knife.

Officer Nixon and his partner had [Appellant] sit down on the steps and asked him why he had a knife. [Appellant] repeatedly claimed that he stabbed that "motherfucker" because the person had a gun. At some point, Officer Nixon's body-worn camera was activated, and the video from the camera was admitted at trial as Commonwealth Exhibit C-4 ("Exh. C-4"). The video from Officer Nixon's body camera shows that [Appellant] was wearing red pants and a white t-shirt. [Appellant] described the person he stabbed to the officers as a person who was six feet tall and wearing a white t-shirt. Based on his observations of

- 3 -

[Appellant] at that time, Officer Nixon believed [Appellant] to be under the influence of drugs or alcohol. The officers brought [Appellant] up to the street and placed him in the back of a police car. While in the vehicle, [Appellant] complained to Officer Nixon that the handcuffs were too tight and then threatened that he would kill Officer Nixon if he did not take off the handcuffs. [Appellant] also spit at Officer Nixon through the lowered window of the police car.

At trial, [Appellant] elected to testify in his defense and claimed that he "cut" the person pictured in the video only because the person had a gun and was robbing him. More specifically, he testified as follows:

[O]n the day of May 4th I was standing by the beer and convenience store and the victim – that's the victim – and I'm a victim myself – he came up and snatched my money out of my hand. He snatched my money out of my hand and snatched my K2. I was high off the drugs of K2. He pulled – he pulled out a gun. He had a gun on him. So I didn't know what to do. It was fight or flight. I chose to fight, your Honor. When he turned his head I cut him. Then he fled. He fled northbound. He [went] northbound to Kensington and Somerset. I didn't know what else to do, your Honor. The man had a gun. On the cameras it didn't show that. It only showed my hand when I cut him.

[Appellant] further testified, "I feel as though I'm the victim of the circumstances because he tried to rob me. He was robbing me. It was a robbery." On cross-examination, [Appellant] testified that the person he had cut had snatched $150 and two packs of K2 out of his hand.

(Trial Court Opinion, filed December 7, 2020, at 2-5) (internal citations and footnote omitted).

Procedurally, the court convicted Appellant of the above-mentioned crimes on March 12, 2020. On September 28, 2020, the court sentenced Appellant to an aggregate term of 33-66 months' incarceration, followed by

four years of reporting probation. Appellant timely filed a notice of appeal that day.[2] On October 6, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following the grant of an extension of time, Appellant timely filed a Rule 1925(b) statement on November 10, 2020.

Appellant raises two issues for this Court's review:

Is Appellant entitled to an arrest of judgment on all of the convictions because the Commonwealth failed to prove that Appellant did not act in self-defense beyond a reasonable doubt and thus the evidence was insufficient to sustain the convictions?

Did the learned trial court commit an abuse of discretion by admitting the hearsay statement of Ms. Echevarria under the excited utterance exception to the hearsay rule?

(Appellant's Brief at 3) (capitalization omitted).

After a thorough review of the certified record, the briefs of the parties, and the relevant law, we conclude the record supports the trial court's analysis of Appellant's issues. Consequently, we affirm the judgment of sentence for the reasons stated in the opinion entered by the Honorable Anthony G. Kyriakakis on December 7, 2020.

Specifically, regarding Appellant's first issue on appeal, the trial court noted that it found Appellant's trial testimony incredible. Additionally, the court explained, "the other evidence presented at [Appellant]'s trial was more

---

[2] Appellant filed an amended notice of appeal on October 10, 2020.

than sufficient to disprove [Appellant]'s self-defense claim." (Trial Court Opinion at 7). Video evidence from the security camera showed that Appellant approached the victim, contradicting Appellant's claim that the victim approached Appellant. (*Id.* at 7-8). Statements by Ms. Echevarria, as recorded by Officer Nuss's body-worn camera, established that while standing only a few feet away from the victim, she saw Appellant come up from behind and stab the victim. (*Id.* at 8). Video of Appellant after the incident and the testimony of Officer Nixon further showed Appellant's mental state as highly agitated and violent near the time of the incident. (*Id.*) Appellant admitted he was under the influence of drugs on the night in question. (*Id.*) Based on the foregoing, the court concluded "the evidence clearly established that [Appellant] did not reasonably believe he was in danger or otherwise act in self-defense when he stabbed Mr. Luper. His challenge to the sufficiency of the evidence lacks merit." (*Id.*)

With respect to Appellant's second issue on appeal, the court decided Ms. Echevarria's statements fell under the excited utterance exception to the hearsay rule. (*Id.* at 9). The record showed that Ms. Echevarria made her statements in relation to the startling event of Mr. Luper's sudden stabbing, which she witnessed from a distance of only a few feet away. (*Id.* at 9). Her statements were made at or near the location of the stabbing and within approximately ten minutes of its occurrence. (*Id.* at 9-10). Further, she had been describing the incident to someone else before Officer Nuss had even

approached her. (*Id.* at 9). She was visibly shaking and speaking quickly throughout her statements and time interacting with the officers, to such an extent that Officer Nuss instructed her to breathe. (*Id.* at 9-10). Additionally, the security camera footage confirmed the accuracy of Ms. Echevarria's statements regarding the location, manner, and perpetrator of the crime. (*Id.* at 10). The footage also confirmed her presence at the scene, and Officer Nuss's body-camera footage confirmed Ms. Echevarria made the statements in question. (*Id.* at 10-11).[3]

Further, to the extent Appellant argues that admission of the body camera footage violated his Sixth Amendment right to confrontation,[4] the trial court explained that the primary purpose of questioning Ms. Echevarria was to address an ongoing emergency, so her statements were not testimonial in nature. (*Id.* at 12). Rather, the officers were seeking to "identify and apprehend a person who, within the past ten minutes, had violently stabbed

_____

[3] We note that in his brief Appellant states "the trial court abused its discretion because the testimony in question was clearly inadmissible hearsay that was admitted for the truth of the matter asserted, namely that [A]ppellant waved around and pointed a gun." (Appellant's Brief at 24). Nowhere in the record is Appellant accused of possessing a firearm. Rather, the evidence showed that Appellant possessed a knife.

[4] The Commonwealth states that Appellant did not make a Sixth Amendment claim in his Rule 1925(b) statement. Nevertheless, Appellant stated in his concise statement that Ms. Echevarria's statements were inadmissible because they were testimonial in nature, elicited for purposes of prosecution, and the product of police questioning. As the trial court understood Appellant's particular claim and addressed it in the court's opinion, we decline the Commonwealth's invitation to find waiver on this ground.

a victim on the sidewalk of a busy street and was still at large, clearly posing an ongoing and dangerous threat to others in the area."[5] (*Id.*) Ms. Echevarria was already describing the stabbing to a civilian bystander. (*Id.*) The questioning was informal in nature, lasted approximately four minutes, and took place on the sidewalk near the location of the stabbing. (*Id.*) Immediately after speaking with her, Officer Nuss radioed the information to other officers. (*Id.*) Our review of the record supports the court's analysis of Appellant's issues. Accordingly, we affirm based on the trial court's opinion.[6]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2021

_____

[5] Appellant argues that the situation was resolved prior to Ms. Echevarria's contact with police because SEPTA officers had already apprehended him by that time. Thus, Appellant insists the questioning of Ms. Echevarria was for the purpose of prosecution and establishing prior events rather than addressing an ongoing emergency. Nevertheless, the record shows that the officers who questioned Ms. Echevarria were unaware Appellant had already been apprehended at that time.

[6] We direct the parties to attach a copy of the trial court's December 7, 2020 opinion to all future filings pertaining to our disposition of this appeal.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA :

:     CP-51-CR-0004726-2019

v.     :

:

HAKIM LOFTON     :     1904 EDA 2020
1980 EDA 2020

:

## O P I N I O N

**KYRIAKAKIS, J.**                                    **December 7, 2020**

On March 12, 2020, at the conclusion of a waiver trial before this Court, defendant Hakim Lofton was convicted of aggravated assault (18 Pa.C.S. § 2702(a)), possessing an instrument of crime ("PIC") (18 Pa.C.S. § 907(a)), simple assault (18 Pa.C.S. § 2701(a)), and recklessly endangering another person (18 Pa.C.S. § 2705). On September 28, 2020, the Court imposed an aggregate sentence of 33 to 66 months of incarceration, followed by four years of reporting probation. This appeal followed.

Defendant raises two issues on appeal. First, he alleges that the evidence presented at trial was insufficient to support his convictions because the Commonwealth failed to disprove his claim of self-defense. Defendant's Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal ("Statement of Errors") at ¶ 1. Second, defendant contends that the Court abused its discretion at trial by admitting the out-of-court, videotaped statements of an eyewitness to the crimes under the

DEC X 7 2020

Office of Judicial Records
Appeals/Post Trial

1

"excited utterance" exception to the rule against hearsay. *Id.* at ¶ 2. For the reasons set forth below, both of defendant's claims are without merit, and the judgment of sentence should be affirmed.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia Police Officers Booker and Nuss, and Transit Police Officers McEwan and Nixon of the Southeastern Pennsylvania Transit Authority (SEPTA). The Commonwealth's evidence also included videos taken from the body-worn cameras of Officers Nuss and Nixon, as well as a video of the assault recorded by a security camera. Defendant testified on his own behalf. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the below facts.

On May 4, 2019, at approximately 9:00 p.m., while driving his patrol car near the 2800 block of Somerset Street in the Kensington section of Philadelphia, Officer Booker noticed a man in the middle of the street holding the side of his neck with one hand and waving his other hand in the air to get the officer's attention. Notes of Testimony ("N.T.") 3/11/20 at 10–13. Officer Booker stopped his patrol car, and the man, later identified as Eric Luper, told Officer Booker that he had been stabbed near that location. *Id.* at 13–14, 18. Officer Booker observed that the left side of Mr. Luper's neck had two puncture wounds, which were still actively bleeding.[1] *Id.* at 13–14. Soon thereafter, Officer Nuss arrived. *Id.* at 21. Officer Booker then took Mr. Luper into his patrol car at approximately 9:08 p.m. and began driving him towards Temple University Hospital for treatment. *Id.* at 17–18.

---

[1] The parties stipulated that Mr. Luper's wounds were the result of a "serious bodily injury," as that term is defined for purposes of the relevant charges in this case. N.T. 3/11/20 at 15.

2

Officer Nuss stayed behind to survey the area for any witnesses to the stabbing. *Id.* at 21. He also activated his body-worn camera. *Id.* at 22–23. The video from his camera was admitted at trial as Commonwealth Exhibit C-3 ("Exh. C-3"). *Id.* At approximately 9:08 p.m., Officer Nuss encountered a woman named Omayra Echevarria, who was visibly shaking, stuttering her words, and talking quickly and loudly about the stabbing to an unidentified female on the street. *Id.* at 16–17, 21–23; Exh. C-3 at 01:08:10. Officer Nuss approached Ms. Echevarria, who at that time was stating to the female, "so the dude went like this with a knife," while holding her right arm up high in the air. Exh. C-3 at 01:08:10. Officer Nuss asked, "Ma'am, what did he look like?" *Id.* at 01:08:14. Ms. Echevarria described the stabber to Officer Nuss as a skinny, black male who was about the same height as Officer Nuss and who was wearing red pants and a "wife-beater" t-shirt. *Id.* at 01:08:15. Officer Nuss then immediately used his radio to relay Ms. Echevarria's description to his fellow officers. *Id.* at 01:08:30. Ms. Echevarria further stated that, after the stabbing, the stabber ran toward the nearby "El" station stop. *Id.* at 01:08:47.

Officer Nuss's partner, Officer McEwan, also was present at the scene. N.T. 3/11/20 at 48–49. After the officers asked where the stabbing took place, Ms. Echevarria led them down the street and pointed out a pillar outside a grocery store located at 2769 Kensington Avenue. *Id.* at 49; Exh. C-3 at 01:11:53. She explained that the victim was standing at the pillar, that Ms. Echevarria was standing a few feet away, and that the stabber came up from behind them and stabbed the victim. Exh. C-3 at 01:11:57. She further stated that the stabber said nothing before stabbing the victim. *Id.* at 01:12:04. Ms. Echevarria made all of the aforementioned statements to the officers within the first four minutes of initially being approached by Officer Nuss. N.T. 3/11/20 at 22; Exh. C-3 at 01:08:10–01:12:05. She was visibly shaking and speaking quickly

3

throughout the time she was with the officers. *Id.* At one point, Officer Nuss instructed Ms. Echevarria to breathe in an apparent effort to calm her down. Exh. C-3 at 01:09:19.

After Officer McEwan noticed security cameras out front of the grocery store, he went inside and successfully recovered video from a camera that had captured the stabbing. N.T. 3/11/20 at 49. The video was admitted at trial as Commonwealth Exhibit C-5 ("Exh. C-5"). *Id.* at 49–50. The video revealed that two or three people were standing right in front of the pillar identified by Ms. Echevarria when a person with a white t-shirt walked northbound towards them, stopped in front of the pillar, and swung an arm down towards another person who was also wearing a white t-shirt. *Id.* at 51; Exh. C-5. The victim then ran away while the stabber paused for a few moments before crossing the street. Exh. C-5.

At approximately 9:00 p.m. that same evening, SEPTA Transit Officer Nixon was on patrol nearby with his partner at the platform for SEPTA's Somerset Station. N.T. 3/11/20 at 35–36. Upon hearing his partner tell someone to "drop the knife," Officer Nixon looked down the steps of the platform towards his partner and saw defendant Hakim Lofton. *Id.* at 36–37. Officer Nixon observed defendant running up the stairs of the platform holding a knife that appeared to be approximately six to eight inches long. *Id.* at 38. Officer Nixon had his taser out, his partner drew her gun, and then defendant immediately dropped the knife. *Id.*

Officer Nixon and his partner had defendant sit down on the steps and asked him why he had a knife. *Id.* at 40. Defendant repeatedly claimed that he stabbed that "motherfucker" because the person had a gun. *Id.* at 41. At some point, Officer Nixon's body-worn camera was activated, and the video from the camera was admitted at trial as Commonwealth Exhibit C-4 ("Exh. C-4"). *Id.* at 43–45. The video from Officer Nixon's body camera shows that defendant was wearing red pants and a white t-shirt. Exh. C-4 at 21:04:40. Defendant described the person he stabbed to the

4

officers as a person who was six feet tall and wearing a white t-shirt. *Id.* Based on his observations of defendant at that time, Officer Nixon believed defendant to be under the influence of drugs or alcohol. N.T. 3/11/20 at 43. The officers brought defendant up to the street and placed him in the back of a police car. *Id.* at 45. While in the vehicle, defendant complained to Officer Nixon that the handcuffs were too tight and then threatened that he would kill Officer Nixon if he did not take off the handcuffs. *Id.* at 47–48. Defendant also spit at Officer Nixon through the lowered window of the police car. *Id.* at 48.

At trial, defendant elected to testify in his defense and claimed that he "cut" the person pictured in the video only because the person had a gun and was robbing him. N.T. 3/12/20 at 23–24. More specifically, he testified as follows:

> [O]n the day of May 4th I was standing by the beer and convenience store and the victim – that's the victim – and I'm a victim myself – he came up and snatched my money out of my hand. He snatched my money out of my hand and snatched my K2. I was high off the drugs of K2. He pulled – he pulled out a gun. He had a gun on him. So I didn't know what to do. It was fight or flight. I chose to fight, your Honor. When he turned his head I cut him. Then he fled. He fled northbound. He threatened [sic] northbound to Kensington and Somerset. I didn't know what else to do, your Honor. The man had a gun. On the cameras it didn't show that. It only showed my hand when I cut him.

*Id.* at 23. Defendant further testified, "I feel as though I'm the victim of circumstances because he tried to rob me. He was robbing me. It was a robbery." *Id.* at 24. On cross-examination, defendant testified that the person he had cut had snatched $150 and two packs of K2 out of his hand. *Id.* at 28.

The Court found defendant's testimony to lack credibility based both on his demeanor while testifying and the substance of his testimony. His description of the stabbing incident was inconsistent with both the videotaped description provided by Ms. Echevarria and the separate security video that captured the incident. Contrary to defendant's testimony, the video shows that

defendant was the one who approached Mr. Luper that night, not the other way around. Moreover, as defendant himself admitted, he was under the influence of drugs at the time of the incident, which further undermined the reliability of his account.

## II.    DISCUSSION

### A. *Sufficiency of the Evidence*

Defendant claims that the evidence was insufficient to support his convictions for aggravated assault, possessing an instrument of crime, simple assault, and recklessly endangering another person. Statement of Errors at ¶ 1. His sole argument regarding the sufficiency of the evidence is that the Commonwealth failed to rebut his claim of self-defense. *Id.* More specifically, he contends, "The Commonwealth did not present sufficient evidence proving that [defendant] provoked, initiated, or continued the incident, could have fled in complete safety, or his belief that he was in danger of serious bodily injury or death was unreasonable." *Id.* This claim is without merit.

In considering a challenge to the sufficiency of the evidence, a court must decide whether the evidence at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences derived therefrom, could enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017). In making this assessment, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder. *See Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa. Super. 2011) (citation omitted).

The use of force against a person is justified "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by" another person. 18 Pa.C.S. § 505(a). "If a defendant introduces evidence of self-defense, the

6

Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011) (citation omitted).

The Commonwealth can disprove a claim of self-defense by establishing that "[1] the accused did not reasonably believe that he was in danger of death or serious bodily injury; or [2] the accused provoked or continued the use of force; or [3] the accused had a duty to retreat and the retreat was possible with complete safety." *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted). "If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue." *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000) (citation omitted).

In this case, defendant testified at trial that he "cut" Mr. Luper only because Mr. Luper had come up to him, pulled out a gun, and robbed defendant of drugs and $150 in cash that defendant had been holding in his hand. N.T. 3/12/20 at 23–24, 28. In so testifying, defendant presented evidence of self-defense sufficient to impose a burden upon the Commonwealth of disproving his self-defense claim beyond a reasonable doubt. *See Houser*, 18 A.3d at 1135.

The Court found that defendant's testimony lacked credibility, in part based on his demeanor. However, as our Supreme Court explained in *Commonwealth v. Torres*, 766 A.2d 343 (Pa. 2001), a case cited by defendant in his Statement of Errors at ¶ 1, "the Commonwealth cannot sustain its burden of [disproving a claim of self-defense] solely on the fact finder's disbelief of the defendant's testimony." *Id.* at 345. Nevertheless, in this case, the other evidence presented at defendant's trial was more than sufficient to disprove defendant's self-defense claim. Defendant's claim that Mr. Luper was the one to approach him was shown to be false by the video obtained from the security camera that captured the incident. The video showed that it was defendant who

7

approached Mr. Luper. N.T. 3/11/20 at 51; Exh. C-5. The statements made by Ms. Echevarria, which were recorded through the body-worn camera of Officer Nuss, further refuted defendant's self-defense claim. She stated that she was standing only a few feet away from the victim when she saw the stabber come up from behind and stab the victim. Exh. C-3 at 01:11:57. Additionally, the video of defendant taken minutes after the incident, together with the testimony of Officer Nixon, showed defendant to be in a highly agitated and violent mental state near the time of the incident, after which he spit at Officer Nixon and threatened to kill him. Exh. C-4; N.T. 3/11/20 at 47–48. Moreover, by his own admission, defendant was under the influence of drugs that evening. N.T. 3/12/20 at 23.

Accordingly, the evidence clearly established that defendant did not reasonably believe he was in danger or otherwise act in self-defense when he stabbed Mr. Luper. His challenge to the sufficiency of the evidence lacks merit.

B. *Admissibility of Statements by Omayra Echevarria*

Defendant also contends that this Court abused its discretion at trial by admitting the videotaped statements made by Omayra Echevarria, who did not testify at trial, under the "excited utterance" exception to the rule against hearsay. Statement of Errors at ¶ 2.

It is solely within the discretion of the trial court to determine the admissibility of evidence. *See Commonwealth v. Reid*, 99 A.3d 470, 493 (Pa. 2014) ("The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion."). An abuse of that discretion occurs "where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (citation omitted).

8

As an eyewitness to the stabbing, Ms. Echevarria made statements to police in which she described the assailant, the location of the incident, and the manner in which the stabbing took place. N.T. 3/11/20 at 16–17, 21–23, 49; Exh. C-3. Because these out-of-court statements were offered by the Commonwealth to prove the truth of the matters asserted, the statements constituted hearsay under Rule 801 of the Pennsylvania Rules of Evidence. *See* Pa.R.E. 801(c).

Although hearsay is generally inadmissible at trial, *see* Pa.R.E. 802, one of the exceptions to the rule against hearsay applies to excited utterances, *see* Pa.R.E. 803(2). Rule 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). Our Supreme Court also has often cited the following common-law definition of an excited utterance:

> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Murray*, 83 A.3d 137, 157–58 (Pa. 2013) (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 495-96 (Pa. 2009) (quoting *Commonwealth v. Stokes*, 615 A.2d 704, 712 (Pa. 1992))).

It is beyond dispute that the statements made by Ms. Echevarria related to a startling event, namely, the sudden stabbing of Mr. Luper. She closely witnessed the stabbing, standing just a few feet away as it happened. Exh. C-3 at 01:11:57. She made the statements while still at or near the location of the stabbing. N.T. 3/11/20 at 22; Exh. C-3 at 01:08:10–01:12:05. She was already in the process of describing the stabbing before being approached by the police. *Id.* at 16–17, 21–23; Exh. C-3 at 01:08:10. She was visibly shaking and speaking quickly while she

9

made the statements.[2] N.T. 3/11/20 at 22; Exh. C-3 at 01:08:10–01:12:05. Officer Nuss instructed Ms. Echevarria to breathe in an apparent effort to calm her down. Exh. C-3 at 01:09:19. And the statements were all made within approximately ten minutes from when the stabbing took place, and within four minutes from when Officer Nuss first approached Ms. Echevarria.[3] N.T. 3/11/20 at 10–13, 16–17, 21–23; Exh. C-3 at 01:08:10–01:12:05. In view of all these circumstances, Ms. Echevarria's statements qualified as excited utterances.

Moreover, the fact that Ms. Echevarria's statements were corroborated by the video recovered from the security camera was another factor weighing in favor of their admissibility. *See Commonwealth v. Gray*, 867 A.2d 560, 571 (Pa. Super. 2005) (finding the court did not abuse its discretion in admitting statements as excited utterances in part because statements were corroborated by other evidence). The security video revealed that the stabbing took place at the precise location identified by Ms. Echevarria, in the manner she described, and by a person matching the description she provided. Exh. C-3 at 01:08:10–01:12:05; Exh. C-5. The video also corroborated that Ms. Echevarria was standing only a few feet away from the location of the

---

[2] Defendant further contends that Ms. Echevarria's statements were made after a period of time had passed sufficient to allow her to "calm down." Statement of Errors at ¶ 2. However, the evidence at trial established that Ms. Echevarria was visibly shaking and speaking quickly throughout the time she was with the officers. N.T. 3/11/20 at 22; Exh. C-3 at 01:08:10–01:12:05.

[3] Our Supreme Court has explained that "there is no clear-cut rule as to the time sequence required for a statement to qualify as an excited utterance" and that "fact-specific determination is to be made on a case-by-case basis." *Commonwealth v. Boczkowski*, 846 A.2d 75, 95-96 (Pa. 2004) (citing *Commonwealth v. Pronkoskie*, 383 A.2d 858, 862–63 (1978)). The Court has also held statements qualified as excited utterances with time sequences comparable to the approximately ten-minute period that elapsed between the time of the stabbing and the time of Ms. Echevarria's statements in this case. *See, e.g., Commonwealth v. Jones*, 912 A.2d 268, 282 (Pa. 2006) ("We find no error on the part of the trial court. Less than ten minutes after being shot, [victim] identified [defendant] as one of the shooters."); *Commonwealth v. Douglas*, 737 A.2d 1188, 1194–95 (Pa. 1999) (upholding the admission of a victim's excited utterance made eleven minutes after a shooting).

10

stabbing as it took place, Exh. C-5, just as she had stated, Exh. C-3 at 01:11:57. There also can be no doubt that Ms. Echevarria actually made the statements in question, given that they were all recorded by Officer Nuss's body-worn camera.

Defendant further contends that Ms. Echevarria's statements should not have been admitted because they were testimonial in nature, elicited for purposes of prosecution, and the product of police questioning. Statement of Errors at ¶ 2.

While it is correct that the statements made by Ms. Echevarria were the product of police questioning, our Supreme Court has stated that "the jurisprudence of this Commonwealth makes it clear that a statement, which otherwise qualifies as an excited utterance, is not precluded from falling within the excited utterance exception to the hearsay rule when made in response to questioning." *Commonwealth v. Jones*, 912 A.2d 268, 282–83 (Pa. 2006); *see also Commonwealth v. Manley*, 985 A.2d 256, 266 (Pa. Super. 2009) (holding that victim's statement was admissible as excited utterance where victim was interviewed by police "shortly after" a shooting while still in a "panicked and emotional state").

The Sixth Amendment to the United States Constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. amend VI. This constitutional guarantee, known as the Confrontation Clause, applies to statements that are testimonial in nature; statements that are nontestimonial are subject only to "traditional limitations upon hearsay evidence." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

In determining whether statements made in response to police questioning are testimonial, the U.S. Supreme Court has explained:

> Statements are nontestimonial when made in the course of police interrogation
> under circumstances objectively indicating that the primary purpose of the

11

interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. The focus of such an inquiry should remain on "the perspective of the parties at the time of the interrogation, and not based on hindsight, for '[i]f the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause.'" *Commonwealth v. Allshouse*, 36 A.3d 163, 174 (Pa. 2012) (quoting *Michigan v. Bryant*, 562 U.S. 344, 361 n.8 (2011). A court must also consider "the circumstances surrounding the interrogation, including the formality and location, and the statements and actions of both the interrogator and the declarant." *Allshouse*, 36 A.3d at 176.

The facts here indicate that the primary purpose of the interrogation of Ms. Echevarria was to enable police assistance to meet an ongoing emergency, namely, to identify and apprehend a person who, within the past ten minutes, had violently stabbed a victim on the sidewalk of a busy street and was still at large, clearly posing an ongoing, dangerous threat to others in the area. *See* Exh. C-3 at 01:08:10–01:12:05. It bears noting that Ms. Echevarria was already in the process of describing the stabbing to a civilian bystander before being approached by the police. *Id.* at 01:08:10. Immediately after Ms. Echevarria provided a physical description of the stabber and his clothing, Officer Nuss radioed the information to other officers to assist them in apprehending the stabber. *Id.* at 01:08:30. All of the police questioning of Ms. Echevarria took place informally over the course of four minutes on the sidewalk near where the stabbing took place, not at a police station or interview room. *Id.* at 01:08:10–01:12:05. In view of all these circumstances, the statements made by Ms. Echevarria were not testimonial in nature and their admission at trial did not violate the Confrontation Clause.

12

### III. CONCLUSION

For all of the reasons set forth above, the Court's judgment of sentence should be affirmed.

BY THE COURT:

ANTHONY G. KYRIAKAKIS, J.

13

*Commonwealth v. Hakim Lofton*                    CP-51-CR-0004726-2019

## **PROOF OF SERVICE**

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Defense Counsel:     Joseph O'Donnell, Esquire
116 E. Allen St.
Philadelphia, PA 19125

Type of Service:     (x) First Class Mail        ( ) Certified    ( ) Personal Service

District Attorney:     Lawrence Goode, Esquire
Chief, Appeals Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Type of Service:     (x) First Class Mail        ( ) Certified    ( ) Personal Service

Defendant:     Hakim Lofton
Inmate No. 0827811
Philadelphia Industrial Correctional Center
8301 State Road
Philadelphia, PA 19136

Type of Service:     (x) First Class Mail        ( ) Certified    ( ) Personal Service

Date: December 7, 2020

_____
Judicial Law Clerk's Signature